UNITED STATES of America,
Plaintiff–Appellee,

v.

Tony ALANIS, Defendant–Appellant.

No. 02–30194.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 2003.

Filed July 10, 2003.

As Amended July 16, 2003.

David Ness and Melissa Harrison, Federal Defenders of Montana, Missoula, MT, for the defendant-appellant.

Lori Harper Suek, Assistant United States Attorney, Great Falls, MT, for the plaintiff-appellee.

Before REINHARDT, W. FLETCHER, and GOULD, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

When a defendant objects to a prosecutor's peremptory strikes of potential jurors in alleged violation of the Equal Protection Clause, trial courts are supposed to evaluate the constitutionality of the prosecutor's actions using the three-step process the Supreme Court announced in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In this appeal, we determine whether, after a prosecutor offers a race-neutral explanation for the peremptory strikes (step two of the *Batson* process), a trial court must proceed to step three to make a deliberate decision on purposeful discrimination even absent a further affirmative request by the defendant. We conclude that a defendant's original objection imposes on the trial court an obligation to complete the third step of the *Batson* process, when required, without further request from counsel. We also hold that, on these facts, a *Batson* equal protection violation occurred.

## I

In selecting a jury for Tony Alanis's abusive sexual conduct trial, the prosecutor used all six of her peremptory challenges to strike men from the jury. Defense counsel objected, and the following exchange occurred:

DEFENSE COUNSEL: Your Honor, under *Batson v. Kentucky* and the [*J.E.B. v. Alabama ex rel. T.B.*] case, either party in litigation are disallowed from triking people either because of their race or because of their gender. In this case, there's no indication that people were struck solely for their gender; but I do note that with respect to the government's peremptory challenges, each and every one of their peremptory challenges were men. Most of these people weren't even questioned during the voir dire process by the government. In looking through their juror questionnaires and listening to their answers, I can see no other reason for their being struck other than the fact of their gender.

Under these circumstances, under *Batson*, I believe the government is required to give a gender-neutral explanation for why they struck—why they made all their challenges.

THE COURT: Well, your position is well-taken, Mr. Ness. If a *Batson* challenge is raised on the basis of gender,

then it is indeed the obligation of the United States to make a declaration as to the basis for having exercised those challenges other than on the basis of gender.

The prosecutor then offered a gender-neutral explanation for striking each man. One man was struck because he was from Glasgow, Montana, and so might disbelieve the government's Native American witnesses. Another was struck because he was old and might have trouble hearing or staying alert. Two were struck because they were young and because they had no children. And two more were struck because they had no children.

After the prosecutor gave these explanations, the court denied defense counsel's *Batson* motion:

THE COURT: It does appear—It appears to the court that the government has offered a plausible explanation based upon each of the challenges discussed that is grounded other than in the fact of gender of the person struck. The *Batson* challenge is denied.

The jury that tried Alanis consisted of nine women and three men. Of the nine women, three had no children, and one was young and had no children.

The jury convicted Alanis of abusive sexual conduct, and he was sentenced to twenty-seven months imprisonment. He appeals.

## II

The Fourteenth Amendment's Equal Protection Clause prohibits prosecutors from intentionally striking potential jurors on the basis of gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).[1]

When a defendant alleges that a prosecutor has violated this prohibition, a trial court must evaluate the defendant's allegation using the three-step process announced in *Batson:*

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of [gender]. Second, if that showing has been made, the prosecution must offer a [gender]-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1035, 154 L.Ed.2d 931 (2003) (internal citations omitted). The district court properly conducted steps one and two of the three-step *Batson* process after defense counsel's original objection. The parties disagree whether the district court was obliged, absent further demand from defense counsel, to proceed to the third step. We agree with Alanis that the court was obliged to proceed to the third step and to announce a deliberate decision accepting or rejecting the claim of purposeful discrimination.

The Supreme Court has emphasized that the trial court has a *duty* to proceed to step three to answer the "critical question" of whether the prosecutor's justifications for peremptory strikes are persuasive. *See Miller–El,* 123 S.Ct. at 1040. The Court has stated that

[o]nce the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, *the trial court then has the duty* to determine if the defendant has established purposeful discrimination.

---

1. Whether the district court was obliged to proceed to step three of the Batson process is a legal question we review de novo. Cf. Tol-

bert v. Page, 182 F.3d 677, 680 n. 5 (9th Cir.1999) (en banc).

*Hernandez v. New York,* 500 U.S. 352, 363, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality) (emphasis added) (internal quotation marks and brackets omitted). *See also id.* at 359, 111 S.Ct. 1859 (holding that the "trial court *must* determine whether the defendant has carried his burden of proving purposeful discrimination") (emphasis added); *Batson,* 476 U.S. at 93, 106 S.Ct. 1712 ("In deciding if the defendant has carried his burden of persuasion, a court *must* undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.' ") (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)) (emphasis added); *id.* at 98, 106 S.Ct. 1712 ("The prosecutor ... must articulate a neutral explanation related to the particular case to be tried.... *The trial court then will have the duty* to determine if the defendant has established purposeful discrimination.") (emphasis added); *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) ("If a race-neutral explanation is tendered, the trial court *must* then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.") (footnote omitted) (emphasis added). Moreover, we have held that the trial court has an "affirmative duty" to determine if the defendant has established purposeful discrimination. *Lewis v. Lewis,* 321 F.3d 824, 832 (9th Cir.2003). The trial court has a duty to proceed to step three, even

absent further request from counsel, because it is not until step three that the court rules on "the ultimate question of intentional discrimination." *See Hernandez,* 500 U.S. at 359, 111 S.Ct. 1859. *See also Lewis,* 321 F.3d at 830 ("It is in the third step ... that the court reaches the real meat of a *Batson* challenge.").

▮ The Supreme Court has never suggested that a defendant must repeatedly request that the trial court proceed to each successive stage of the *Batson* process once the defendant has made his or her original objection. Nor would such a requirement for repeated demands by counsel be correct. We hold that a defendant's original objection to a prosecutor's allegedly discriminatory peremptory strikes, even after it is met with a prosecutor's gender-neutral explanation, imposes on the trial court an obligation to complete all steps of the *Batson* process without further request, encouragement, or objection from counsel.[2]

▮ Here, the defendant made a prima facie showing that the prosecutor exercised peremptory challenges on the basis of gender, the first *Batson* step. The prosecution then offered a gender-neutral basis for striking each potential juror, the second *Batson* step. Rather than proceeding to the third *Batson* step, however, the district court denied the defendant's objection:

> THE COURT: It does appear—It appears to the court that the government

---

**2.** We do not decide what specific procedures a trial court must follow at step three. We note, however, that the Supreme Court has made clear that courts must conduct "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Batson,* 476 U.S. at 93, 106 S.Ct. 1712 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). At a minimum, this procedure must include a clear record that

the trial court made a deliberate decision on the ultimate question of purposeful discrimination. See generally *Lewis,* 321 F.3d at 831 ("[A] court engaging in the third step of Batson has various tools at its disposal in order to fulfill its duty to determine whether purposeful discrimination has occurred. In an ideal setting, a court would use most, if not all, of these tools in evaluating a Batson motion.").

has offered a plausible explanation based upon each of the challenges discussed that is grounded other than in the fact of gender of the person struck. The *Batson* challenge is denied.

The district court erred by failing to proceed to step three to evaluate meaningfully the persuasiveness of the prosecutor's gender-neutral explanations.[3] It is not enough that the district court considered the government's gender-neutral explanations "plausible." Instead, it is necessary that the district court make a deliberate decision whether purposeful discrimination occurred.

Had the court properly proceed to step three, it would have concluded that the prosecutor's gender-neutral explanations were pretexts for purposeful discrimination. The record shows that the prosecutor did not strike four female jurors who possessed the same objective characteristics the prosecutor claimed she found objectionable in the men she struck from the jury. Peremptory challenges cannot be lawfully exercised against potential jurors of one gender unless potential jurors of another gender with comparable characteristics are also challenged. *See McClain v. Prunty*, 217 F.3d 1209, 1220 (9th Cir. 2000) ("This comparison between SR and MG fatally undermines the credibility of the prosecutor's stated justification."); *Turner v. Marshall*, 121 F.3d 1248, 1251 (9th Cir.1997) ("[T]he prosecutor's stated reasoning is revealed as pretextual in the light of a comparison between McCain and a nonminority juror who ultimately was empaneled."); *United States v. Chinchilla*, 874 F.2d 695, 699 (9th Cir.1989) (reversing a conviction because the prosecutor's stated reason for striking a Hispanic juror applied equally to a non-Hispanic juror who was not struck).[4] If the prosecutor's stated gender-neutral explanations were genuine and not merely pretextual, the prosecutor would have excluded women on the same basis, which, of course, she did not.[5]

3. The government argues that the district court in fact conducted step three of the *Batson* process by deeming the prosecutor's gender-neutral explanations "plausible." But under *Batson* it is not sufficient for equal protection purposes that a trial court deem a prosecutor's gender-neutral explanations facially plausible. Rather, in determining whether the challenger has met his or her burden of showing intentional discrimination, the district court must conduct a sensitive inquiry into such circumstantial and direct evidence of intent as may be available, as we noted above. *Batson*, 476 U.S. at 93, 106 S.Ct. 1712. The district court's deeming the prosecutor's explanation "plausible" was not the required "sensitive inquiry." *See Lewis*, 321 F.3d. at 832 (holding that a trial court did not fulfill its step three duty by concluding that a prosecutor's stated race neutral reason for striking a potential African American juror was "probably ... reasonable.").

4. We have held that there may be no *Batson* violation, even though prospective jurors of different races or genders provided similar responses and one was excused while the other was not, so long as the prosecutor struck jurors based on subjective grounds that were not "objectively verifiable." *See Burks v. Borg*, 27 F.3d 1424, 1429 (9th Cir.1994).

5. Ordinarily, it is for the trial court, rather than for the appeals court, to perform the third step of the *Batson* process in the first instance. As we have explained, a finding of purposeful discrimination turns in large part on the trial court's evaluation of the prosecutor's credibility in offering gender-neutral reasons for peremptory strikes. *Lewis v. Lewis*, 321 F.3d 824, 830 (9th Cir.2003). This is because "the best evidence [of purposeful discrimination] often will be the demeanor of the attorney who exercises the challenge," and "evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859 (internal quotation marks omitted). Here, however, we must conclude, even based on a "cold record," that the prosecutor's stated reasons for striking prospective male jurors was a pretext for purposeful discrimination.

Our Constitution's Framers recognized that trial by jury is "the very palladium of free government." The Federalist No. 83 (Alexander Hamilton).[6] For the jury to perform its historic and beneficial role in our democracy, it must be constituted with no taint of purposeful discrimination based on race or gender. Because Alanis's equal protection rights were violated by prosecutors' purposeful removal of men from the jury that convicted him, we reverse his conviction.[7]

**REVERSED AND REMANDED.**

---

6. For an engaging and informative discussion of the trial jury's historic origins, triumphs, and challenges in American democracy, see generally William L. Dwyer, In the Hands of the People (2002).

7. In light of our decision to reverse Alanis's conviction, we need not and do not decide whether the district court abused its discretion in allowing the prosecutor to present evidence that Alanis failed to appear at an interview scheduled with an investigator.