**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIO ALEMAN,<br>*Petitioner-Appellant*,<br><br>v.<br><br>DOMINGO URIBE, JR., Warden,<br>*Appellee-Respondent*. | No. 09-55837<br><br>D.C. No.<br>2:06-cv-04687-<br>JSL-RZ |
| RAYMOND MALDONADO,<br>*Petitioner-Appellant*,<br><br>v.<br><br>GREG LEWIS, Warden, Acting<br>Warden,<br>*Respondent-Appellee*. | No. 09-56191<br><br>D.C. No.<br>2:06-cv-06606-<br>JSL-RZ<br><br>ORDER AND<br>AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
J. Spencer Letts, Senior District Judge, Presiding

Argued and Submitted
March 7, 2013—Pasadena, California

Filed June 14, 2013
Amended July 16, 2013

Before: Kim McLane Wardlaw and Ronald M. Gould, Circuit Judges, and Mark L. Wolf, Senior District Judge.[*]

Order;
Opinion by Judge Gould

---

## SUMMARY[**]

### Habeas Corpus

Affirming the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition raising a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), the panel held that a state court does not violate a defendant's constitutional rights by denying a *Batson* motion based on a prosecutor's credible explanation that he or she made an honest mistake in exercising a peremptory challenge to dismiss the wrong juror.

---

### COUNSEL

Jan B. Norman (argued), Los Angeles, California, for Petitioner-Appellant Mario Aleman.

Fay Arfa (argued), Fay Arfa, A Law Corporation, Los Angeles, California, for Petitioner-Appellant Raymond Maldonado.

---

[*] The Honorable Mark L. Wolf, Senior District Judge for the U.S. District Court for the District of Massachusetts, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Michael R. Johnsen (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Dane R. Gillette, Chief Assistant Attorney General; Lance E. Winters, Senior Assistant Attorney General, Los Angeles, California, for Respondents-Appellees.

## ORDER

The opinion filed on June 14, 2013 and published at __ F.3d __, 2013 WL 2665530, is **AMENDED** as follows.

In the final paragraph on page six of the slip opinion, "United States District Court for the Eastern District of California" is deleted and replaced with "United States District Court for the Central District of California."

In the first full paragraph on page seven of the slip opinion, "Eastern District of California" is deleted and replaced with "Central District of California."

An amended opinion is filed concurrently with this order.

No further petitions for rehearing or rehearing en banc will be accepted.

**OPINION**

GOULD, Circuit Judge:

Mario Aleman and Raymond Maldonado, appeal separate district court decisions denying their 28 U.S.C. § 2254 habeas petitions. They both allege that their convictions were secured in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We consolidated these cases for oral argument and disposition because Aleman and Maldonado challenge the same *voir dire* proceeding conducted before their joint trial was held in the Superior Court for the County of Los Angeles. Both contend that the trial court erred by accepting as credible and race-neutral the prosecutor's explanation for his use of a peremptory challenge to dismiss a Hispanic[1] juror. They contend that the prosecutor's challenge was motivated by racial bias. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

**I**

On July 4, 2000, Aleman, Maldonado, and a third accomplice, all members of the Toonerville street gang, robbed a man at gunpoint and took his wallet and gold necklace. LAPD Officers Thomas Baker and Carlos Langarica received a radio report of the robbery and immediately saw and began following the suspects' gray Honda. A high-speed car-chase ensued, leading the officers into Toonerville street-gang territory. When they reached the heart of Toonerville territory, the officers encountered a

---

[1] Some might use the term Latino/a, but because the state court throughout its reasoning used the term Hispanic, we follow that approach in this opinion.

washing machine in the middle of the road. The officers feared ambush. They were right. As the cars slowed to avoid the washing machine, someone threw a bicycle in front of the patrol car. The officers swerved to avoid the bicycle. Then, while the officers were thus diverted and slowed, a sniper started to shoot at them. The suspects also fired at the officers from the Honda. The officers called for backup and tried to speed away. The suspects blocked their escape. The officers returned fire. When the gunfire ceased, the officers arrested Maldonado and the third accomplice. Aleman was caught fleeing the scene.

Maldonado and Aleman were each convicted by jury trial on two counts of attempted first-degree murder of a peace officer and one count of second-degree robbery. The jury found that these crimes had been committed to further gang activity. Maldonado and Aleman were each sentenced to two consecutive life terms for attempted murder and five years for robbery, plus various gang and weapon enhancements.

This appeal concerns the jury selection process for Appellants' joint trial. During *voir dire*, the prosecutor exercised four of his first five peremptory challenges on Hispanic jurors. When the prosecutor dismissed a fourth Hispanic juror, defense counsel objected, asserting a *Batson* violation.[2] The trial court found that the defense had established a prima facie case of purposeful discrimination

---

[2] Defense counsel objected under *People v. Wheeler*, 583 P.2d 748 (1978), the California analog to *Batson*. *See Cook v. LaMarque*, 593 F.3d 810, 813 (9th Cir. 2010). Because "a *Wheeler* motion serves as an implicit *Batson* objection," it was sufficient to preserve Aleman and Maldonado's constitutional claims. *Crittenden v. Ayers*, 624 F.3d 943, 951 n.2 (9th Cir. 2010).

under *Batson* and asked the prosecutor to explain why he removed each Hispanic juror.

Appellants challenge the prosecutor's reason for excusing one of the four jurors—Juror Acevedo. The prosecutor explained that he dismissed Juror Acevedo based on her statement that she was too "prissy" to be a police officer. To him, this suggested that Juror Acevedo might be too sensitive for the violent details of the case. He explained that he preferred older, more experienced jurors, and that he preferred the two prospective jurors next in line for the panel. The prosecutor gave similar reasons for excusing the three other Hispanic jurors, explaining that he was concerned about youth, sensitivity, lack of life experience, and bias against police.

After a recess, the trial court denied the *Batson* challenge. With regard to Juror Acevedo, the trial court explained that the "prissy" comment was "not the strongest excuse," but concluded that it was a valid, race-neutral justification based on the trial court's observation of the prosecutor's credibility and the prosecutor's acceptance of the jury panel several times with Hispanic members.

The next morning, the trial court once again addressed the *Batson* motion. The trial judge had seen upon an independent review of the record that another venireperson, and not Juror Acevedo, had made the "prissy" comment. The trial court asked the prosecutor to explain the discrepancy and to give any other justification for excusing Juror Acevedo. The prosecutor responded that he had been ill during *voir dire*, which affected his memory and caused him to take deficient notes. He concluded that he must have confused Juror Acevedo with the juror who made the "prissy" comment

because they were sitting near each other and, to him, both seemed too sensitive for the case. The trial court concluded that the prosecutor's exclusion of Juror Acevedo was based on an "honest mistake" and not on racial bias. In explaining this conclusion, the trial court reiterated that the prosecutor had accepted the jury several times with Hispanic members.

On direct appeal, the California Court of Appeal affirmed Aleman and Maldonado's convictions. After a detailed review of the facts, the Court of Appeal concluded that the trial court did not abuse its discretion in denying the Defendants' *Batson* motion and upheld the trial court's *Batson* ruling.

Aleman filed his 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus in the United States District Court for the Central District of California on July 27, 2006, claiming that his constitutional rights were violated because the prosecutor removed Juror Acevedo based on racial bias. The magistrate judge concluded that the state courts' decisions did not result from an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. The district court accepted this reasoning and denied Aleman's § 2254 petition. We granted Aleman a certificate of appealability on his *Batson* claim.

The Central District of California also reviewed Maldonado's § 2254 Petition, filed on October 17, 2006. The same magistrate judge concluded that it was not objectively unreasonable for the state courts to find that the prosecutor dismissed Juror Acevedo based on an honest mistake. The district court adopted the magistrate judge's Report and Recommendations and denied Maldonado relief. We then

granted Maldonado a certificate of appealability on his *Batson* claim.[3]

## II

Both Aleman and Maldonado filed their § 2254 Petitions after April 24, 1996, so our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Crittenden*, 624 F.3d at 949. AEDPA establishes a "highly deferential standard of review." *Id.* Under that standard, we may grant a writ of habeas corpus only if the last reasoned state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[4]

---

[3] On appeal, Maldonado also raised the uncertified issue of whether the trial court denied his constitutional right to present a defense by excluding evidence of Officer Langarica's use of force in other situations. We decline to expand our scope of review to include this issue because Maldonado has not met his burden of showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[4] In his brief to this court, Aleman argued that this court should review his claim de novo because the California Court of Appeal recited the erroneous "strong likelihood" standard for establishing a prima facie case under *Batson*. *See Williams v. Runnels*, 432 F.3d 1102, 1105 (9th Cir. 2006) ("[W]here the state court used the 'strong likelihood' standard for reviewing a *Batson* claim, . . . our review is de novo."). But at oral argument, Aleman's counsel conceded that this was a losing argument. We agree. This case concerns the California Court of Appeal's application of *Batson*'s third step. Whether Aleman established a prima facie case of discrimination is not at issue. And even if the Court of Appeal considered the erroneous prima facie standard in its review of

## III

This case requires us to resolve a single but important question: Whether, under AEDPA's deferential standard, a state court violates a defendant's constitutional rights by denying a *Batson* motion based on a prosecutor's credible explanation that he or she made an honest mistake in exercising a peremptory challenge to dismiss the wrong juror. We hold that it does not.

"A *Batson* challenge has three steps." *Cook*, 593 F.3d at 814. At the first step, the defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge based on race. *Id*.[5] If the court finds that a prima facie case has been made, then step two requires the prosecutor to give a race-neutral reason for exercising the challenge. *Id*. Under *Batson*'s third step, the trial court must determine whether the defendant has carried his burden to prove that the prosecutor engaged in "purposeful discrimination." *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc) (quoting *Batson*, 476 U.S. at 98). To make this determination, the trial court must "evaluate 'the persuasiveness of the justification.'" *Id*. (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam)). "Although the prosecutor's reasons for the strike must relate to the case to be tried, the court need not believe

---

Aleman's claim, any error would be harmless because application of the heightened "strong likelihood" standard at step one would only strengthen Aleman's claim of purposeful discrimination at step three.

[5] A prima facie case is established if the defendant shows that "(1) the prospective juror is a member of a 'cognizable racial group,' (2) the prosecutor used a peremptory strike to remove the juror and (3) the totality of the circumstances raised an inference that the strike was on account of race." *Crittenden*, 624 F.3d at 955 (quoting *Batson*, 476 U.S. at 96).

that 'the stated reason represents a sound strategic judgment' to find the prosecutor's rationale persuasive; rather, it need be convinced only that the justification 'should be believed.'" *Jamerson v. Runnels*, 713 F.3d 1218, 1224 (9th Cir. 2013) (quoting *Kesser*, 465 F.3d at 359).

We have recently explained that there is a "fine distinction between a prosecutor's false statement that creates a new basis for a strike that otherwise would not exist and a prosecutor's inaccurate statement that does nothing to change the basis for the strike." *Id*. at 1232 n.7. A prosecutor's credibility is undermined when he or she offers an explanation for a peremptory challenge that mischaracterizes a juror's testimony in a manner completely contrary to the juror's stated beliefs. *See id.* (citing *Miller-El v. Dretke*, 545 U.S. 231, 243–44 (2005) (explaining that a prosecutor's gross mischaracterization of a juror's stance on the death penalty suggested an ulterior reason for excluding that juror). On the other hand, if a prosecutor makes a mistake in good faith, such as an innocent transposition of juror information, then that mistake does not support the conclusion that the prosecutor's explanation is clearly not credible. *See id.* (citing *Rice v. Collins*, 546 U.S. 333, 340 (2006)). This is a fact-based inquiry. To determine if a prosecutor's mistake undermines his or her credibility, we must consider whether, based on the facts of the case, the mistake indicates purposeful discrimination instead of innocent error. *See Mitleider v. Hall*, 391 F.3d 1039, 1049 (9th Cir. 2004) (*Batson* is not violated by prosecutor's honest, but mistaken belief as long as it is not pretextual). After all, *Batson* prohibits purposeful discrimination, not honest, unintentional mistakes. *See Batson*, 476 U.S. at 98.

It was not objectively unreasonable for the California Court of Appeal to affirm the trial court's *Batson* ruling on the ground that an honest mistake is not evidence of racial bias. For a prosecutor to eliminate a prospective juror by peremptory strike based on an honest mistake as to what that juror had said in *voir dire* is not the same, for constitutional purposes, as striking the juror based on an intentionally discriminatory motive. The record supports the trial court's finding that the prosecutor's mistake was credible, honest, and unintentional. During *voir dire*, the prosecutor stated several times that he was feeling under the weather. In fact, when the prosecutor initially explained his reasons for excusing Juror Acevedo, he stated, "I am sorry. I am having a hard time articulating my thoughts because I am not feeling well." The record also shows that Juror Acevedo was sitting near the juror who made the "prissy" comment, and, when asked the same question about police work, Juror Acevedo said that she would not be able to deal with the pressure of police work. Given the prosecutor's illness, the jurors' proximity to each other, and the relative similarity of their comments, it is a permissible finding of the trial court to say that the prosecutor innocently transposed the responses from the jurors. Such "innocent transposition makes little headway toward the conclusion that the prosecutor's explanation was not clearly credible." *Rice*, 546 U.S. at 340.

We must give "double deference" to the trial court's credibility finding where that finding was affirmed by the state court of appeals. *Jamerson*, 713 F.3d at 1234. One level of deference arises from the broad power of a trial court to assess credibility of the prosecutor's statements that were made in open court. Another level of deference arises from the AEDPA context where we defer to state court decisions that are not objectively unreasonable. *See Briggs v. Grounds*,

682 F.3d 1165, 1170 (9th Cir. 2012) ("Here our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it."). Applying this double deference, we cannot say that the Court of Appeal's decision, which relied on the trial court's credibility finding, was objectively unreasonable.

There is ample support in the record for the trial court's determination that the prosecutor did not act with purposeful discrimination when he removed Juror Acevedo based on his mistaken belief that she had said that she was too "prissy" for police work. In the initial *Batson* proceeding, the prosecutor explained that he removed Juror Acevedo because her "prissy" comment caused him to believe that she was sensitive and would have a difficult time dealing with the firearms and violence in the case. Although, as the trial court noted, this was not the strongest explanation, in the context of this case it is sufficient to show the absence of discriminatory intent. *See Mitleider*, 391 F.3d at 1050 ("The prosecutor's motives, however, must be considered on the basis of the facts set forth in each particular case.").

Other factors reinforce that conclusion: First, the prosecutor's explanation was related to the case, which involved very violent facts, and it would be reasonable to conclude that a sensitive juror might have a tough time dealing with that violence. *See id.* at 1049 (recognizing that immaturity and lack of life experience are legitimate bases for peremptory challenges). Second, as the trial court noted, the prosecution accepted the panel several times with Hispanic members. *See Burks v. Borg*, 27 F.3d 1424, 1429 (9th Cir. 1994) (considering the prosecutor's acceptance of minorities

on the jury a valid, but not necessarily dispositive, factor). Third, the trial court conducted a thorough review of the record and twice assessed the prosecutor's credibility, first during its initial *Batson* review and then when it reopened the *Batson* motion. This was not a "rubber stamp" decision by the state trial court. Fourth, comparative analysis does not show that the trial court's determination was objectively unreasonable. Appellants argue that the prosecutor did not challenge other jurors who had less life experience than Juror Acevedo. Although these other jurors bear some similarity to Juror Acevedo, the record does not show that they were so similar as to compel the conclusion that the state court erred in concluding that the prosecutor did not purposefully discriminate. *See Burks*, 27 F.3d at 1429–30 (sustaining the state court's decision where the objective evidence of discrimination was relatively weak). In short, there was ample support for the California trial court's decision that the prosecutor made an honest mistake and did not intentionally discriminate in jury selection. On this premise, the California Court of Appeal decided that the important principle of *Batson* was not violated. We conclude that this was not an objectively unreasonable application of *Batson*. Accordingly, we affirm the district court's denial of habeas corpus relief.

**AFFIRMED.**