IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,894

STATE OF KANSAS,
*Appellee*,

v.

JOSE ALBERTO GONZALEZ-SANDOVAL,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution applies to the State's privilege to strike prospective jurors through peremptory challenges. An appellate court uses a three-step analysis established in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), when considering a challenge that the State exercised its peremptory strikes based on purposeful racial discrimination.

2.

The party who alleges discriminatory selection of the jury has the burden to prove the existence of purposeful discrimination.

3.

A defendant alleging discriminatory selection of the jury must make out a prima facie case of purposeful discrimination under the first step prescribed by *Batson*. The party may establish the prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. On

1

appeal, we exercise unlimited review over a trial court's rulings relating to this first *Batson* step.

4.

Under the second step of the analysis required by *Batson*, once a party has established a prima facie case of discriminatory intent, the burden of production shifts to the party making the peremptory strike to come forward with a neutral, nondiscriminatory reason for exercising a peremptory strike. While the burden of production switches, the burden of persuasion rests with, and never shifts from, the opponent of the strike.

5.

The explanation required in *Batson*'s second step must be reasonably specific but need not be based solely on the prospective juror's answers. And while the justification for exercising the peremptory strike must be facially valid, it need not necessarily be plausible or persuasive. If a prosecutor explains a reason for striking a juror that does not relate to the characteristics of any particular race, the reason is race-neutral.

6.

The State's honest but mistaken belief about a facially valid race-neutral reason for striking a minority venire member does not presumptively amount to purposeful discrimination for purposes of *Batson*.

7.

Under the third step of the *Batson* analysis, once the party making the peremptory strike offers a race-neutral explanation, the party claiming discriminatory conduct bears the burden of showing pretext. The trial judge must then assess the plausibility of the proffered reason for the strike based on all the evidence. When reviewing this factual

determination, appellate courts accord great deference to the trial court. On appeal, we review the decision under an abuse of discretion standard—that is, to determine if the trial court made an error of law; made an error of fact; or was otherwise arbitrary, fanciful, or unreasonable.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 536, 390 P.3d 84 (2017). Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed December 21, 2018. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Christopher S. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  A jury convicted Jose Alberto Gonzalez-Sandoval of aggravated indecent liberties with a child. He appealed to the Court of Appeals, raising four issues. A majority of the Court of Appeals panel found one argument meritorious. It held the trial court abused its discretion in not granting Gonzalez-Sandoval a new trial because of the State's exercise of a peremptory strike that removed an individual with a Spanish surname from the jury panel. See *State v. Gonzalez-Sandoval*, 53 Kan. App. 2d 536, 561-65, 390 P.3d 84 (2017).

Generally, each party may use peremptory strikes—also called peremptory challenges—to reject a certain number of potential jurors without stating a reason. But if

another party objects to the peremptory strike under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the district court must follow a specified procedure and allow the peremptory strike only after determining purposeful discrimination did not motivate the strike.

Gonzalez-Sandoval objected to the State using a peremptory strike to remove an individual with a Spanish surname from the pool of potential jurors. The State responded, in part, by stating the prospective juror had not been candid when asked during the jury selection process about having been a witness or having been interviewed by law enforcement. The district court determined the State had a race-neutral reason for striking the potential juror. Later, the State's prosecutors advised the district court the juror had not been a witness or been involved in the investigation they mentioned. They explained how they had made the mistake, and the district court found that the prosecutors had honestly believed the reasons they gave for exercising the peremptory strike. Because one of the State's reasons was race-neutral, the district court denied Gonzalez-Sandoval's renewed objection. And after the verdict, the district court denied Gonzalez-Sandoval's request for a new trial in which he alleged the State had discriminated during jury selection.

On appeal, a majority of the Court of Appeals panel determined the circumstances showed the peremptory strike was not race-neutral. The majority thus concluded the district court should have granted Gonzalez-Sandoval a new trial. See *Gonzalez-Sandoval*, 53 Kan. App. 2d at 559-71.

The State timely sought this court's review. Gonzalez-Sandoval did not cross-petition to ask for our review of the Court of Appeals' adverse rulings on his remaining issues. Thus, the only issue before us is whether the trial court abused its discretion in

4

denying Gonzalez-Sandoval's *Batson* objection. Gonzalez-Sandoval does not ask us to go outside the *Batson* framework.

We reverse the Court of Appeals and affirm the trial court. The outcome of this appeal hinges on the trial court's findings that (1) the State honestly believed the factual basis it first offered as the reason for its strike and (2) the reason was not a pretext. These findings relate to questions of credibility, which this court does not reweigh. The Court of Appeals suggested reasons, which, if established, might suggest pretext. But Gonzalez-Sandoval did not make those arguments and has not met his burden of establishing the State exercised its peremptory strikes based on purposeful racial discrimination. Thus, he has failed to establish that the trial court abused its discretion in denying his motion for new trial.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case were fully set forth in the Court of Appeals opinion. See *Gonzalez-Sandoval*, 53 Kan. App. 2d at 537-54. For purposes of this court's review, the relevant facts relate only to the State's peremptory strike of a minority prospective juror.

To put the disputed strike in context, three individuals in the group called for jury duty and assigned to Gonzalez-Sandoval's trial—a group called the venire—had Spanish surnames. The State sought to or did exercise either a challenge for cause or a peremptory strike of all three.

One of the three was dismissed for cause because she revealed she could not be fair and impartial in considering a case involving indecent liberties with a child because

5

of her experience as a victim of a sex crime. Gonzalez-Sandoval did not object to this challenge and does not raise it as an issue on appeal.

Likewise, on appeal, he does not argue the trial court erred in handling the State's peremptory strike to a second potential juror because the trial court ruled the State could not exercise its challenge. This potential juror had a hyphenated surname, only the last portion of which sounded Spanish. When Gonzalez-Sandoval objected to the strike based on *Batson*, the prosecutor responded that she was not sure the potential juror was a member of an ethnic or a racial minority. The trial court ruled it would consider anyone with a Spanish-sounding surname to be a member of a minority class. The State then explained that the potential juror "didn't respond very much to any of the questions" and "it just sometimes didn't seem that she was engaged in the process." The trial court found: "[W]e don't know or have any indication . . . that she would have had any responses." The trial court thus determined the State could not exercise the peremptory strike to remove the juror.

The opposite outcome resulted from the State's peremptory strike to the third juror with a Spanish-sounding surname, who we will call T.R. The prosecutor had asked T.R. some specific questions. And T.R. had responded. But the State would later assert T.R. did not respond to a different question asked of the entire group of potential jurors.

Specifically, the State first asked if any of the group had "been a witness, such as [being] questioned during an investigation or [having] to appear in court as a witness on a sex crime case?" No one responded, and the State does not suggest that T.R. should have responded to that question. The State then asked, "Has anybody been a witness, just in any kind of case where you had to answer questions to a law enforcement officer?" Five individuals responded. Two merely said, "Yes." A third revealed the nature of the case—vandalism. A fourth said he testified in a criminal case, and the fifth said, "I've answered

6

questions for an investigation." T.R. did not respond. T.R.'s failure to answer this question and to reveal she had been a witness or had been questioned during an investigation led to the State exercising one of its peremptory challenges to strike T.R.

When Gonzalez-Sandoval's attorney objected based on *Batson*, the prosecutor responded:

"As far as Juror [T.R.], Your Honor, the State put questions to the jury about whether they had been a witness in a case or whether they had been questioned by the police involved in any way. [T.R.] was a witness in Arzate, an endorsed—we believe she was an endorsed witness in the Arzate case and had questions asked of her. We also have her in an investigation about her son where she was questioned some in her—her son-in-law, I'm sorry Judge, about the use of her own personal cell phone. And so we have knowledge of her, but she did not respond to our questions in regards to whether she'd been questioned before or a potential witness, either answering questions of law enforcement. Also, she avoided a lot of eye contact, Your Honor. Noticing that she was looking away a lot of times, especially in questions that I felt perhaps should have elicited a response, and both of the times that she was a witness—or questioned about being involved in allegations."

Defense counsel replied:

"I don't think that looking away is a good enough reason to strike someone of the same culture or ethnic heritage of the defendant. I don't know what the Arzate case is or what that involves, but it doesn't sound like she's done anything except maybe not being as cooperative as the State had hoped in an investigation. It has nothing to do with this. I don't think it qualifies as legitimate reasons for the *Batson* decision."

The trial court denied Gonzalez-Sandoval's *Batson* objection. It first found "that based upon the surnames that [T.R.] does appear to be of the same ethnicity

as the defendant." Next the trial court determined the "principal challenge" was that the potential juror did not disclose information in response to direct questions, "one of those questions being whether she had been questioned or involved with prior investigations or other investigations." The trial court specifically found this reason was race-neutral. On the other hand, the trial court stated it was "not sure that, standing alone, the question of whether a potential juror avoids eye contact would be a basis—a racially-neutral basis." But the court returned to the principal reason for the strike reiterating that "the indication that the witness was not being truthful in her response, in my opinion, or at least candid in her response would, in my opinion, be a racially-neutral response. And so, I'll therefore allow the peremptory challenge over the defense's objection."

Gonzalez-Sandoval made no other *Batson* objections. The parties completed jury selection, and the court held a lunch recess. After the recess, the prosecutor informed the trial court that the State had learned T.R. had not been involved in the Arzate case. The prosecutor told the judge she had misread her notes from the prosecutor's investigator and a different individual with the same or similar name had been the witness. But the prosecutor said she believed the information about T.R.'s involvement in the second investigation was still correct. Gonzalez-Sandoval renewed his objection, which the trial court overruled.

Gonzalez-Sandoval's jury trial proceeded with the impaneled jury that did not include T.R. On the second day of trial, the State informed the trial court it was also wrong about T.R.'s involvement in the second investigation it had mentioned at the time of the *Batson* challenge. It turned out that alleged witness was a relative of T.R. But the State claimed it saw references to T.R. in the "Spillman Police System" as a witness in an auto-burglary case as well as a criminal damage to property case. Gonzalez-Sandoval again renewed his *Batson* challenge, which the trial court overruled. The court first stated

8

that T.R. should have disclosed the new information. Then it concluded: "I'll continue the same ruling, but note and appreciate the candor of counsel. I think counsel honestly believed what they represented to the Court, it just turned out to be incorrect."

The jury convicted Gonzalez-Sandoval of aggravated indecent liberties with a child. He moved for new trial, arguing, in part, his *Batson* challenge should have been granted. The trial court denied his motion. But the trial court granted Gonzalez-Sandoval's motion for a downward durational departure and sentenced him to 59 months' imprisonment. Gonzalez-Sandoval timely appealed his conviction and sentence.

A majority of the Court of Appeals panel found the trial court erred in denying Gonzalez-Sandoval's *Batson* challenge. Thus, it held he should be granted a new trial. See *Gonzalez-Sandoval*, 53 Kan. App. 2d at 554-68. The majority concluded the State had changed the basis for its peremptory challenge when it eliminated the Arzate case and the second investigation and substituted the possible automobile burglary and criminal damage to property investigations. The Court of Appeals majority concluded the State could not make this shift and the trial judge should have judged its strike based solely on the State's initial reasons. The majority also questioned the procedural fairness of the State's use of the information it had about T.R. and concluded the State should be required to disclose information it has about venire members and confront them with it during jury selection if it intends to use the information to justify a peremptory strike. See 53 Kan. App. 2d at 568-71. The third member of the panel dissented. He concluded "the prosecutor's reasons for striking T.R. as a juror always remained the same" and an appellate court should give deference to the trial court's finding that the prosecutor had not acted with discriminatory intent or motive. 53 Kan. App. 2d at 579-88 (Malone, C.J., dissenting).

9

The State timely petitioned for review, which this court granted. Gonzalez-Sandoval did not ask us to review the panel's adverse rulings on the other issues raised in his brief.

ANALYSIS

The facts present the following question:  If a party exercises a peremptory strike for a reason later found to be untrue, should a new trial be granted? Because of the way the Court of Appeals majority structured its analysis, the State has divided its argument before us into two parts:  (1) Did the Court of Appeals panel err when it concluded the State struck T.R. for a discriminatory reason because it relied on inaccurate information to support its explanation? And (2) did the Court of Appeals majority err in ruling the State must ask the potential juror about the basis of the strike before exercising a peremptory challenge? We will address both questions as we march through the three-step analysis imposed by the United States Supreme Court in *Batson.* To frame that analysis, we will begin with a brief discussion of *Batson* and decisions of the United States Supreme Court applying *Batson*.

*Batson* followed a line of decisions in which the United States Supreme Court had "consistently and repeatedly . . . reaffirmed that racial discrimination by the State in jury selection offends the Equal Protection Clause." *Georgia v. McCollum*, 505 U.S. 42, 44, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992). The Court has observed:  "Defendants are harmed, of course, when racial discrimination in jury selection compromises the right of trial by impartial jury, . . . but racial minorities are harmed more generally, for prosecutors drawing racial lines in picking juries establish 'state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.'" *Miller-El v. Dretke*, 545 U.S. 231, 237-38, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005). But that is not all:  "[T]he very integrity of the courts is jeopardized when a prosecutor's discrimination 'invites

10

cynicism respecting the jury's neutrality,' . . . and undermines public confidence in adjudication." 545 U.S. at 238.

Although aware of the concerns, the United States Supreme Court has struggled with what test best ensures discrimination does not occur in jury selection. The Court has recognized the task becomes complicated because the decision of which jurors a party wants to sit on a jury involves discretion about "choices subject to myriad legitimate influences, whatever the race of the individuals on the panel from which jurors are selected." *Miller-El*, 545 U.S. at 238. At first, "with an eye to preserving each side's historical prerogative to make a peremptory strike or challenge, the very nature of which is traditionally 'without a reason stated,'" the Court "tried to relate peremptory challenge to equal protection by presuming the legitimacy of prosecutors' strikes . . . ." 545 U.S. at 238 (citing *Swain v. Alabama*, 380 U.S. 202, 220, 85 S. Ct. 824, 13 L. Ed. 2d 759 [1965]). But the Court carved an exception that applied "in the face of a longstanding pattern of discrimination:  when 'in case after case, whatever the circumstances,' no [minorities] served on juries." 545 U.S. at 238 (quoting *Swain*, 380 U.S. at 223-24). In other words, a defendant who established systemic discrimination could prevail. 545 U.S. at 236.

The systemic discrimination test's "crippling burden of proof" proved unworkable, however. *Batson,* 476 U.S. at 92-93. As a result, in *Batson*, the Court replaced that test "with the rule that discrimination by the prosecutor in selecting the defendant's jury sufficed to establish the constitutional violation." *Miller-El*, 545 U.S. at 236. The *Batson* Court established a three-step process. A distinct standard applies to the appellate review we conduct of each step of the trial court's consideration. See *State v. Dupree*, 304 Kan. 43, 57-58, 371 P.3d 862 (2016).

11

The *Batson* Court emphasized:  "As in any equal protection case, the 'burden is, of course,' on the defendant who alleges discriminatory selection of the venire 'to prove the existence of purposeful discrimination.' [Citation omitted.]" *Batson*, 476 U.S. at 93. As we will discuss when we get to *Batson*'s second and third steps, the Court of Appeals majority erred by shifting this burden of persuasion to the State.

*Step One:  Prima Facie Showing That Peremptory Challenge Is Based on Race*

Under the first step prescribed by *Batson*, a defendant alleging discrimination in the jury selection "may make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 93-94; see *Johnson v. California*, 545 U.S. 162, 170, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005). On appeal, we exercise unlimited review over the trial court's rulings relating to this first step. *Dupree*, 304 Kan. at 57.

When Gonzalez-Sandoval made his objection, the State offered reasons for the strike. The trial court then found "that based upon the surnames that [T.R.] does appear to be of the same ethnicity as the defendant." After that statement, the court immediately turned to the next *Batson* step. It, thus, appears the trial court held Gonzalez-Sandoval had satisfied *Batson*'s first step, although it did not label its ruling as a step-one determination.

On appeal, there is no dispute that T.R. was a member of a protected class for purposes of *Batson*. Thus, the first step of the analysis—a prima facie showing by the party making the *Batson* challenge—is not at issue. See *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) ("Once a prosecutor has offered a race-neutral explanation . . . and the trial court has ruled on the ultimate question of

12

intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."); *Dupree*, 304 Kan. at 58 (when parties did not dispute step one, court focused on the remaining steps).

We hold Gonzalez-Sandoval met his burden of establishing the first step of his *Batson* challenge.

*Step Two: The State Must Establish a Neutral, Nondiscriminatory Reason*

Under the second step of the *Batson* analysis, once a party has established a prima facie case of discriminatory intent, the burden of production shifts to the other party—the party making the peremptory strike. That party must come forward with a neutral, nondiscriminatory reason for exercising the peremptory strike. *Batson*, 476 U.S. at 94; see *Miller-El*, 545 U.S. at 239; *Dupree*, 304 Kan. at 58. Significantly, while the burden of production switches, the burden of persuasion "rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995).

A *Batson* step-two explanation must be "reasonably specific" but need not be based solely on the prospective juror's answers. *Purkett*, 514 U.S. at 775; *State v. Arteaga*, 257 Kan. 874, 883, 896 P.2d 1035 (1995). For example, body language may be a race-neutral reason. See *State v. Hood*, 245 Kan. 367, 374, 780 P.2d 160 (1989). The prosecution "carries a relatively low burden to provide a race-neutral reason for a strike—the justification must be facially valid, but it need not necessarily be plausible or persuasive." *Dupree*, 304 Kan. at 59. "Where a prosecutor offers an explanation for striking a juror which does not relate to the characteristics of any particular race, such reason is race-neutral." *State v. Campbell*, 268 Kan. 529, 534, 997 P.2d 726 (2000).

As a reminder, here, the State offered what the trial court categorized as two justifications for striking T.R. First, the trial court recognized as a race-neutral reason for the State's peremptory strike that T.R. "did not disclose in response to direct questions" information she should have disclosed. The court specifically referred to T.R.'s failure to respond to the State's question about whether any juror "had been questioned or involved with prior investigations." The court added: "[T]he indication that the witness was not being truthful in her response, in my opinion, or at least candid in her response would, in my opinion, be a racially-neutral response. And so, I'll therefore allow the peremptory challenge over the defense's objection." Second, the trial court referred to T.R. avoiding eye contact. But the court determined that reason, standing alone, would not justify the strike.

Regardless of the trial court's refusal to accept the second reason, its factual finding that T.R. had not responded with candor states a race-neutral reason for exercising the peremptory strike. See *Hernandez*, 500 U.S. at 360 ("A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror."); see also *Elem*, 514 U.S. at 768-69 (prosecution's proffered explanation about a potential juror's appearance satisfied its burden of articulating a nondiscriminatory reason for the strike; noting, for step two, the prosecution did not even have to provide a "minimally persuasive" explanation because "the persuasiveness of the justification becomes relevant" in step three).

In holding the reason was not race-neutral, the Court of Appeals majority focused on the fact that the State disclosed its mistaken belief that T.R. had been involved in the Arzate case and another investigation. The Court of Appeals majority emphasized that the State had offered a third and perhaps fourth investigation—an automobile burglary and a criminal damage to property incident—as examples of T.R.'s failure to disclose information when asked about being questioned by law enforcement. The majority saw

14

T.R.'s alleged involvement in the four investigations as four separate reasons for the State's exercise of the peremptory strike. See *Gonzalez-Sandoval*, 53 Kan. App. 2d at 559-60. The Court of Appeals majority felt this meant the prosecution changed its reason for exercising the strike and, it held, the prosecution "must stand or fall on the initial reasons [it] provide[s] . . . for striking a minority juror." 53 Kan. App. 2d at 562 (citing *United States v. Taylor*, 636 F.3d 901, 905 [7th Cir. 2011] [applying *Miller-El*]).

In embarking on an analysis about whether the State could change the basis for its strike, the Court of Appeals majority failed to recognize that the trial court "continue[d] the same ruling" and found that the prosecutors "honestly believed what they represented to the Court" when Gonzalez-Sandoval first made his objection to the State's exercise of its peremptory challenge to T.R. Significantly, the trial court's factual finding of an honest belief by the prosecutor constitutes a credibility determination. And a reviewing court gives "significant deference" to the trial court's factual rulings made as part of the *Batson* analysis because the trial court's "decision rests heavily on an assessment of the credibility and demeanor of the challenging attorney." *Dupree*, 304 Kan. at 60.

Here, this credibility determination is critical to resolving the issue. When the reason for a *Batson* challenge turns out not to be correct, other courts have held the determinative question is whether the State honestly believed the information was true at the point when the State relied on the misinformation.

For example, in *Aleman v. Uribe*, 723 F.3d 976 (9th Cir. 2013), the prosecutor struck a minority juror based on his mistaken belief about a comment the juror had made during jury selection. Neither the court nor the defense corrected the prosecutor's recollection. But the prosecutor later realized his mistake and called it to the trial court's attention. The trial court found it was based on an "honest mistake," not racial bias. 723 F.3d at 980. The Ninth Circuit upheld the trial court, stating "[f]or a prosecutor to

15

eliminate a prospective juror . . . based on an honest mistake as to what that juror had said in *voir dire* is not the same, for constitutional purposes, as striking the juror based on an intentionally discriminatory motive." 723 F.3d at 982.

Several other courts have likewise held an honest mistake about the basis for a peremptory strike is not a presumptive *Batson* violation. See *United States v. Watford*, 468 F.3d 891, 912-13 (6th Cir. 2006) (holding prosecution's admission that it struck minority juror based on misreading of prosecutor's notes did not show discriminatory intent); *People v. Jones*, 51 Cal. 4th 346, 357-61, 247 P.3d 82, 121 Cal. Rptr. 3d 1 (2011) (holding prosecutor's erroneous recollection of potential juror's statements in jury selection was not evidence of intentional discrimination); *People v. Wilson*, 351 P.3d 1126, 1132-33 (Colo. 2015) (same). As the Tenth Circuit Court of Appeals stated in *Hurd v. Pittsburg State Univ.*, 109 F.3d 1540, 1547 (10th Cir. 1997), a shortcut linking a mistaken reason to a pretextual reason conflates the second and third steps of the *Batson* analysis. As explained by one of these courts: "'Faulty memory, clerical errors, and similar conditions that might engender a "mistake" of the type the prosecutor proffered to explain his peremptory challenge are not necessarily associated with impermissible reliance on presumed group bias.' [Citation omitted.]" *Jones*, 51 Cal. 4th at 366.

These cases share an underlying reasoning that is consistent with the core intent of *Batson*, which "prohibits purposeful discrimination, not honest, unintentional mistakes." *Aleman*, 723 F.3d at 982. The prosecution cannot *purposefully* discriminate where it honestly but mistakenly believes the nondiscriminatory reasons given for its peremptory strike. Here, the trial court found the State "honestly believed what [it] represented to the Court." Thus, even though ultimately mistaken, the prosecution's reasons for striking T.R. did not presumptively show purposeful discrimination. The Court of Appeals majority's contrary view, which labels as pretext any justification unsupported by questions asked of the prospective juror, "elevates an appellate court's review of a cold record above the trial

court's firsthand observation of the proceedings and the attitude of the participants. Only the trial court can assess non-verbal cues, such as hesitation, voice inflection, and facial expressions, that are not recorded on a transcript." *Wilson*, 351 P.3d at 1133.

Given the credibility finding by the trial court, we need not turn to the heart of the Court of Appeals majority's analysis about whether the State could offer additional examples of T.R.'s possible questioning by law enforcement during an investigation. The core basis for the trial court's reason—that the State honestly believed T.R. had not candidly answered questions about her involvement in the Arzate case and another investigation—stands as a race-neutral reason for the strike. And that is all the State needed to do under the second *Batson* step. By demanding more, the Court of Appeals majority essentially created a presumption and ignored "the trial court's step-three duty to distinguish between sham excuses that violate the Equal Protection Clause and bona fide, race-neutral explanations for a peremptory strike." *Wilson*, 351 P.3d at 1133.

*Step Three:  Defendant's Burden to Show Pretext*

The question on appeal centers on the third step of the *Batson* analysis. Under that step, once the prosecution offers a race-neutral explanation, the defendant bears the burden of showing pretext, which "requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." *Miller-El*, 545 U.S. at 252 (citing *Batson*, 476 U.S. at 96-97); see *State v. Washington*, 275 Kan. 644, 653, 68 P.3d 134 (2003) (defendant has "'burden of proving purposeful discrimination'" [quoting *Batson*, 476 U.S. at 98]).

The trial judge's determination of the plausibility of the State's reason is a factual one, and because "the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those

17

findings great deference." *Batson*, 476 U.S. at 98 n.21; see *Miller-El*, 537 U.S. at 339 ("[A] reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations."); *Dupree*, 304 Kan. at 60 (A reviewing court gives "significant deference" to the trial court's rulings because its "decision rests heavily on an assessment of the credibility and demeanor of the challenging attorney."). On appeal, we review the decision under an abuse of discretion standard—that is, to determine if the trial court made an error of law, made an error of fact, or was otherwise arbitrary, fanciful, or unreasonable. 304 Kan. at 57-58. But see *Davis v. Ayala*, 576 U.S. ___, ___, 135 S. Ct. 2187, 2199, 192 L. Ed. 2d 323 (2015) (applying clear error standard).

Here, after the State proffered that T.R. had not been candid in her response to the State's question, Gonzalez-Sandoval responded by arguing that reason was not enough to justify the strike. He seemed to demand a for-cause challenge. But in *Batson*, the Court "emphasize[d] that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97. The trial court then accepted T.R.'s lack of candor as a race-neutral reason and found that reason was not pretextual.

The Court of Appeals majority implicitly held Gonzalez-Sandoval did not need to do more. Instead, it suggested additional things the State should have done. It concluded that as a matter of procedural fairness the State should have confronted T.R. about her alleged questioning by law enforcement. In essence, the majority reasoned confronting a prospective juror is necessary to prevent improper strikes because of faulty information or poorly worded questions. See 53 Kan. App. 2d at 568-71.The majority also pointed out other factors that might suggest the State's reasons were a pretext:

> "[W]e must note that the record reveals that the State used an investigator to look into the background of the minority venire member, T.R. The record does not indicate whether

18

only T.R.'s background was investigated, or whether the backgrounds of only minority venire members were investigated, or whether the backgrounds of all venire members—both minority and nonminority members—were investigated. This is an important question. For example, if the backgrounds of only minority venire members were investigated, there would be no way to compare the similarities and differences between the two groups:  minority and nonminority. This means that minority venire members could be excluded for something in their background which also existed in the background of nonminority venire members. This situation would obviously be unfair and a denial of equal protection to defendants and to minority venire members." 53 Kan. App. 2d at 568.

The proposed procedure and the suggested lines of inquiry might have revealed a discriminatory motive—that is, whether a party's proffered race-neutral justification was merely a pretext. But Gonzalez-Sandoval did not raise any of these matters when making his *Batson* challenge, when arguing the issue the second day of the trial, or when arguing his motion for new trial. During the initial argument, for example, Gonzalez-Sandoval did not ask to inquire of T.R. about the basis for the State's proffer. Nor did he challenge the accuracy of the reasons given by the State in any other way. See *State v. Trotter*, 280 Kan. 800, 815, 127 P.3d 972 (2006) ("If the defendant or the trial court do not correct errors in the prosecutor's statements of fact supporting his or her reasons for exercising peremptory challenges, these facts are considered to be true for purposes of determining whether the prosecutor set forth a race-neutral reason for the strike."). He presented nothing—either through evidence or argument—to suggest pretext. In other words, Gonzalez-Sandoval did nothing to challenge the efficacy of the State's reason or to bring the State's motive into question. If Gonzalez-Sandoval had a concern about how the State gathered information about prospective jurors or the factual accuracy of the State's proffered reason for the strike, he needed to present those arguments to the trial court.

19

In essence, the Court of Appeals majority shifted the burden to the State. But the Court of Appeals majority cited no authority for doing so. The Court of Appeals concluded its approach would be more effective in ferreting out pretextual reasons for the exercise of peremptory strikes. And perhaps it would. But the State argues otherwise and asserts that the Court of Appeals approach would make jury service more onerous and personally invasive. In turn, citizens would be dissuaded from participating. But the relative merits of the *Batson* framework, its deficiencies, or the need to modify it under Kansas law are not questions Gonzalez-Sandoval presented to the Court of Appeals or to us. Cf. *City of Seattle v. Erickson*, 188 Wash. 2d 721, 733, 398 P.3d 1124 (2017) (holding that court has "broad discretion to alter the *Batson* framework to more adequately recognize and defend the goals of equal protection"); Wa. R. Gen. 37 ("The purpose of this rule is to eliminate the unfair exclusion of potential jurors based on race or ethnicity."). Gonzalez-Sandoval simply asks us to apply *Batson*.

Under the third step of the *Batson* analysis, it was Gonzalez-Sandoval's burden to show pretext. See *Miller-El*, 545 U.S. at 252. As a result, we reject the majority's analysis as inconsistent with the analytical framework for *Batson* challenges—the sole basis for Gonzalez-Sandoval's objection, his motion for new trial, or his appeal. See *Dupree*, 304 Kan. at 57-58.

Gonzalez-Sandoval simply did not meet his burden under the third *Batson* step. His counsel merely argued the State's reasons were not good enough to strike T.R. and the State's question was not clear enough to elicit a response. But the lack of candor is a sufficient reason to establish race-neutrality, and other jurors understood the question. On appeal, he has not established an error of law, has not established an error of fact, and has not suggested no other reasonable judge would have reached the same conclusion. In other words, Gonzalez-Sandoval has failed to establish the trial court abused its discretion in determining the State did not purposefully discriminate in ruling on the

20

*Batson* objection. Likewise, he failed to establish that the trial court abused its discretion in denying his motion for new trial on the same basis. See *State v. Longoria*, 301 Kan. 489, 530, 343 P.3d 1128 (2015) (stating abuse of discretion standard for appellate review relating to motion for new trial).

CONCLUSION

The Court of Appeals majority erred in reversing the trial court. The State's honest but mistaken belief about its race-neutral reasons for striking T.R. does not presumptively show purposeful discrimination under *Batson*. And appellate courts defer to a trial court's determination of credibility when judging whether a stated reason for a strike is pretext for discrimination. Here, the trial court determined the reason was race-neutral and not pretext, and Gonzalez-Sandoval did not carry his burden to establish otherwise.

The judgment of the Court of Appeals is reversed. The judgment of the trial court is affirmed.