NOT DESIGNATED FOR PUBLICATION

No. 121,106

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LONNIE JEFFERSON COLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 5, 2020. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

PER CURIAM:  A jury convicted Lonnie Jefferson Cole of possession of methamphetamine and possession of drug paraphernalia. Cole appeals, arguing (1) the district court abused its discretion by failing to grant his motion for mistrial; (2) the district court erred in denying his motion for acquittal; and (3) there was insufficient evidence to support his conviction for possession of methamphetamine. Finding no error by the district court, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2017, on a low call volume night, Hutchinson Police Officer Lance Crenshaw checked the warrant list and discovered that his cousin, Cole, had an outstanding warrant. Crenshaw went to Cole's address and found him in the backyard working on machinery. Hutchinson Police Officer Raven Boettger met Crenshaw at Cole's address to assist with Cole's arrest.

Crenshaw placed Cole under arrest and began to search him. Crenshaw wore a body camera that recorded the arrest, and the recording was admitted at trial. During the search, Cole said, "I've got some drugs on me . . . right there in my pocket" and he "thought there was a bag." Crenshaw asked what he had, and Cole said, "I found it . . . I guess its meth . . . it was in a little bag." Crenshaw removed a plastic bag with a crystal-like substance from Cole's right front jeans pocket. Crenshaw testified he found nothing on Cole that would be considered "use" paraphernalia.

During voir dire, the district court asked the panel whether anyone was acquainted with Cole. One prospective juror, L.M., responded, "Yes." When asked how she knew Cole, L.M. said, "I'm the nurse at the jail." The district court then asked whether this acquaintance would affect her ability to decide the case fairly, to which L.M. responded, "No." Voir dire then continued without further reference to L.M.'s comment or Cole's detention.

Cole used a peremptory challenge to remove L.M. from the panel. After the parties exercised their final preemptory challenges, Cole moved for a mistrial, arguing L.M.'s comment tainted the entire jury pool. The district court noted L.M. was not on the jury, the evidence at trial would show Cole was arrested and taken to jail, and there was no indication the jury would believe her acquaintance with Cole was from anything besides when he was first taken to jail.

Boettger testified to assisting Crenshaw with Cole's arrest. Boettger remembered Cole telling Crenshaw that he had a rock in his pocket and when asked if he was referring to an actual rock from the ground, Cole said no. Lab employees established the chain of custody and confirmed the substance in the plastic bag tested positive for methamphetamine.

After the State presented its evidence, Cole generically moved for a judgment of acquittal on the basis that the State did not make a prima facie case. No specific argument was advanced with respect to either charge, and the district court denied the motion.

The district court then discussed the proposed jury instructions with the parties. The State asked the court to change jury instruction 9, defining the crime of possession of drug paraphernalia, to reflect that "drug paraphernalia" included plastic bags. The district court made the requested change, and Cole had no objection to the instructions. But the State then asked that jury instruction 9 be modified to include language criminalizing paraphernalia used for *storing* a controlled substance. Cole renewed his acquittal motion, arguing, "Count Two is charged as drug paraphernalia with the intent to introduce a controlled substance into the body," not with intent to store a controlled substance. In response, the State moved to amend the complaint to include drug paraphernalia with the intent to store a controlled substance. The district court denied the renewed motion for acquittal, allowed the amendment to the complaint, and made the changes to the jury instruction.

The jury found Cole guilty on both counts. The district court sentenced Cole to an underlying prison sentence of 37 months but placed him on probation for 18 months with mandatory drug treatment. Cole now appeals.

I.      DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING COLE'S MOTION FOR MISTRIAL?

Cole argues the district court abused its discretion by failing to grant his motion for mistrial based on L.M.'s comment. Cole contends the district court should have declared a mistrial because L.M.'s comment inferred that Cole was a resident of the jail, tainting his presumption of innocence. Cole claims the district court did not take any remedial action and striking L.M. from the jury did not mitigate the harm of a comment heard by the entire jury pool. And he argues the district court's denial of his motion was not harmless because "there was scant evidence regarding Mr. Cole's intent and knowledge in this case [and a] diluted presumption of innocence could easily have led the jury to convict Mr. Cole even in light of reasonable doubt on those critical elements."

The State argues L.M.'s comment did not communicate that Cole was a resident of the jail, only that she met him at the jail. The State points out that, in fact, Cole was not a resident of the jail at the time of trial, and the evidence at trial showed Cole was taken to the Reno County Correctional Facility. The State also argues the district court instructed the jury not to consider information about Cole's prior crimes and, thus, Cole received a fair trial.

A district court may declare a mistrial when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(1)(c). The statute creates a two-step process where the district court must determine (1) whether there was a fundamental failure in the proceeding and (2) if there was, whether it was possible to continue the proceeding without injustice. *State v. Barlett*, 308 Kan. 78, 88, 418 P.3d 1253 (2018).

"Appellate courts review a district court's ruling on a motion for mistrial for an abuse of discretion." 308 Kan. at 88. The appellate court's abuse of discretion inquiry is

4

likewise a two-step process: "did the district court abuse its discretion when deciding whether there was a fundamental failure in the proceeding, and did the district court abuse its discretion when deciding whether the conduct resulted in prejudice that could not be cured or mitigated through jury admonition or instruction, resulting in an injustice?" 308 Kan. at 88-89. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126-27, 431 P.3d 850 (2018). The party asserting the district court abused its discretion bears the burden of showing the abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

The United States Constitution does not expressly articulate the presumption of innocence, but it is a component of the right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). The presumption of innocence provides that "'one accused of a crime is entitled to have guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978)." *State v. Ward*, 292 Kan. 541, 570-71, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). This presumption is mandated by statute in Kansas. See K.S.A. 2019 Supp. 21-5108(b).

Cole's reliance on *State v. Simmons*, 45 Kan. App. 2d 491, 249 P.3d 15 (2011), *aff'd* 295 Kan. 171, 283 P.3d 212 (2012), to support his argument is not persuasive. In *Simmons*, the prosecutor asked a witness whether she had been to see the defendant "'since he's been in custody.'" 45 Kan. App. 2d at 494. The defendant argued on appeal the reference to his status as a pretrial detainee was improper and warranted a mistrial. The *Simmons* panel stated: "A prosecutor's reference to a defendant's being in custody, while less corrosive, differs in degree rather than in kind from requiring a defendant to

appear in a jail uniform." 45 Kan. App. 2d at 496. But the panel used the prosecutorial error standard to ultimately find the statement harmless. 45 Kan. App. 2d at 497.

The circumstances here differ in material ways from those in *Simmons.* First, there is a difference between the prosecutor's statement in *Simmons*, which implied the defendant was and had been in jail for some time, and L.M.'s statement that she knew Cole from working at the jail. Her statement does not imply how long or when Cole was at the jail or that he was in jail at the time of trial. Second, in *Simmons*, it was the prosecutor who referred to the defendant's pretrial detention status. Here, it was a potential juror. Whether a fundamental failure in the proceeding has occurred "'varies with the nature of the alleged misconduct, such as whether the allegation is based on the actions of a witness, the actions of a bystander, prosecutorial misconduct, or evidentiary error.'" *State v. Moore*, 302 Kan. 685, 693, 357 P.3d 275 (2015). When, as here, the alleged misconduct is the comment of a potential juror, the comment is unlikely to be a fundamental failure unless the appellant can show that the comment prejudiced the rest of the panel. See *Moore*, 302 Kan. at 695. Finally, the evidence at trial informed the jury that Cole was arrested and taken to jail, and Cole even questioned Crenshaw about Cole's demeanor as he was "going to the jail."

In *Moore*, the Kansas Supreme Court addressed whether a mistrial was warranted when a potential juror stated he would be scared to render a guilty verdict because all of his information was on the juror questionnaire and the defendants could find him. Moore argued this comment tainted the entire panel. The *Moore* court found the district court did not err in denying his motion for mistrial because there was no sign anyone in the jury pool agreed with the potential juror's comments, the defendant did not request an individual polling of the remaining pool to investigate whether there was prejudice, and there was no other evidence suggesting the jury pool was prejudiced by the potential juror's comments. 302 Kan. at 695.

6

In addressing Moore's argument, the Kansas Supreme Court summarized past precedent on motions for mistrial based a potential juror's statements. The *Moore* court cited *State v. Mayberry*, 248 Kan. 369, 380, 807 P.2d 86 (1991), *disapproved on other grounds by State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), which found the district court did not err in denying a defendant's motion for mistrial because a potential juror—who stated he knew the defendant from his previous conviction—was excused for cause and there was no showing of substantial prejudice to the defendant. *Mayberry*, 248 Kan. at 381. The *Moore* court also cited *State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 (2014), where a potential juror disclosed she heard the murder was gang related. The Kansas Supreme Court affirmed the district court's denial of the motion, reasoning there was no prejudice to the rest of the jury:

> "[T]he juror mentioned gang involvement only in passing, and the topic was not brought up again. The defense did not ask for permission to conduct an examination of the jury for prejudice and did not request an instruction directing the jury to disregard unsworn statements by jury members. Furthermore, the defense did not seek to strike the juror in question for cause." 299 Kan. at 146.

Using a similar analysis here, there is no indication the remaining members of the jury pool were prejudiced by L.M.'s comment that she knew Cole from working at the jail. Because the evidence presented established Cole was arrested and taken to jail, the jury panel could reasonably infer that L.M. met Cole at that time. The reference to Cole being in jail was made only in passing, and there was no further discussion of Cole's detention status during voir dire. Cole neither conducted further examination of the jury for prejudice nor requested the district court take any curative action in response to L.M.'s answer.

In sum, we find L.M.'s comments did not cause a fundamental failure in the proceeding, and Cole did not show it prejudiced the jury pool. Therefore, the district court did not abuse its discretion in denying Cole's motion for mistrial.

II.    Did the District Court Err in Denying Cole's Motion for Acquittal?

Cole argues his motion for acquittal at the close of evidence should have been granted because the State "did not introduce any evidence that the plastic baggie was intended to—or even could—be used to introduce a controlled substance into the human body." Cole claims that by allowing the amendment to the complaint to include paraphernalia for *storing* drugs, the district court allowed the State "to change the rules of engagement after the fact to avoid . . . acquittal." The State argues the amendment was proper because it did not change the crime charged; the amended complaint still charged Cole with possession of drug paraphernalia under the same statute. The State also argues the amendment did not prejudice Cole because the only evidence presented throughout the case was that he possessed a bag with methamphetamine and no other item was found on him that could be considered paraphernalia.

The success of Cole's argument on his motion for acquittal turns on whether the amendment by the State was permissible. If the amendment was permissible, then the amended complaint superseded the original complaint and Cole's argument for acquittal based on the unamended charge is moot. See *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012) (stating issue is moot if "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights'").

Under K.S.A. 22-3201(e), the district court "may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." The decision of "[w]hether to allow the amendment is subject to the district court's discretion. . . . Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion." *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006).

8

The amendment here did not charge an additional or different crime. Both complaints charged Cole with possession of drug paraphernalia in violation of K.S.A. 2017 Supp. 21-5709(b)(2), which states: "It shall be unlawful for any person to use or possess with intent to use any drug paraphernalia to: . . . store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body." The original complaint alleged Cole used or intended to use drug paraphernalia "to introduce a controlled substance into the human body." The State's amendment alleged Cole used or intended to use drug paraphernalia "to store a controlled substance." Cole argues the amended complaint charged a different crime. But amending the complaint "to charge an alternative theory for committing the same crime does not constitute the charging of an additional or different crime." *State v. Calderon-Aparicio*, 44 Kan. App. 2d 830, 848, 242 P.3d 1197 (2010) (citing *State v. Starr*, 259 Kan. 713, 720, 915 P.2d 72 [1996]), *rev. denied* January 18, 2011.

For instance, in *Calderon-Aparicio*, the defendant argued the district court erred in allowing the State to amend the complaint from charging him with possession of marijuana with intent to sell to possession of marijuana with intent to sell, deliver, or distribute. A panel of this court found the amendment did not charge a new offense but simply "allowed alternative ways of committing a single offense. . . . [The charged statute] merely enumerates one or more ways of committing a single offense." 44 Kan. App. 2d at 849.

As in *Calderon-Aparicio*, the amendment here did not charge a new crime—the amended complaint still charged Cole with possession of drug paraphernalia under K.S.A. 2017 Supp. 21-5709(b)(2). Instead, the amendment simply changed the way or theory supporting the charge from using the drug paraphernalia to *introduce* a controlled substance into the body to using drug paraphernalia to *store* a controlled substance. Both are enumerated ways to violate K.S.A. 2017 Supp. 21-5709(b)(2). Thus, the amended complaint did not charge a new or additional crime.

The amendment also did not prejudice Cole's substantial rights. Cole relies on *State v. Wade*, 284 Kan. 527, 161 P.3d 704 (2007), to establish he was prejudiced, arguing the amendment changed the rules of engagement after the fact. In *Wade*, the defendant was charged with aggravated burglary based on the predicate felony of first-degree premeditated murder. After Wade testified that he only meant to scare the victim when he entered the house and did not intend to kill her, the State added aggravated assault as an alternative predicate felony for the charge of aggravated burglary. The Kansas Supreme Court found the amendment prejudiced Wade's substantial rights because adding aggravated assault as a predicate felony turned Wade's defense "into an after-the-fact confession" and relieved the State of its burden to prove the charged crime by changing the "rules of engagement, after the fact." 284 Kan. at 536-37.

*Wade* is distinguishable. Here, Cole's defense was he did not have the requisite mental intent for the crimes because he found the bag on the ground and did not know it contained a controlled substance. His "lack of intent" defense applies equally to all the methods of possession of drug paraphernalia under K.S.A. 2017 Supp. 21-5709(b)(2). Unlike *Wade,* the State's amendment did not change the effect of Cole's defense into an after-the-fact confession.

The amendment also did not change the evidence required to prove the crime or the State's burden. The drug paraphernalia charge was always based on Cole's possession of the plastic bag that contained methamphetamine. There was no allegation of any other paraphernalia found during Cole's arrest. At the preliminary hearing, Cole questioned Crenshaw explicitly on whether there was any "use paraphernalia" that would allow Cole to introduce the methamphetamine into the body, to which Crenshaw said, "No." Because the amendment did not change Cole's defense or the evidence at trial, he was not prejudiced by the amendment. See *Calderon-Aparicio*, 44 Kan. App. 2d at 849 (finding defendant not prejudiced by amendment because his defense at trial and evidence did not change based on amendment). Finally, we see no prejudice because Cole knew

10

possession of paraphernalia could be based on storing a controlled substance—he included it in his proposed jury instructions filed more than four months before trial.

In sum, the district court did not err in allowing the amendment to the complaint because it did not charge a new or additional crime and it did not prejudice Cole's substantial rights. Because the amendment was proper, Cole's argument on his motion for acquittal on the unamended charge is moot.

III. WAS THERE SUFFICIENT EVIDENCE TO SHOW COLE KNOWINGLY POSSESSED METHAMPHETAMINE?

Cole argues there was insufficient evidence to support a finding that he knowingly and intentionally possessed methamphetamine. Cole argues the State had to prove he either knew the identity of the substance or knew the substance was controlled. Cole claims the State failed to prove the required mental intent because the evidence showed he found the bag on the ground and he only said he thought it was drugs. Thus, Cole argues the evidence only supported that he "suspected it might" be methamphetamine.

The State argues there was sufficient evidence to support Cole's conviction because even if Cole found the drugs on the ground, the evidence showed he knew it was methamphetamine based on his response of "meth, I guess." The State also argues the jurors were allowed to use their common sense and could have found Cole knew he had methamphetamine.

The standard of review for a claim of sufficiency of the evidence is well known:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the

11

defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Cole was convicted under K.S.A. 2017 Supp. 21-5706(a), which states: "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof." Possession requires "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2017 Supp. 21-5701(q). "Kansas caselaw has long . . . required the State to prove that a defendant knew about the nature of the substance possessed to sustain a conviction for possession of a controlled substance." *State v. Rizal*, 310 Kan. 199, 208, 445 P.3d 734 (2019). Thus, Cole correctly argues the State must show he knew the nature of the substance possessed.

However, contrary to Cole's contention, there was sufficient evidence to support he knew the nature of the substance possessed. Cole argues that his comments about how he found the drugs and thought it was meth show he only suspected, not knew, the nature of the substance. But a sufficiency of the evidence standard takes the evidence in the light most favorable to the State. Here, taking Cole's comments in the light most favorable to the State, the jury could reasonably infer Cole knew he possessed methamphetamine. The jury weighed the evidence and made a credibility determination to find Cole knew the nature of the substance despite the language he used. Cole essentially asks us to reweigh the evidence and take his statements at face value to find that he only suspected the bag contained methamphetamine. But that is not our role. See *Chandler*, 307 Kan. at 668.

The jury also viewed Crenshaw's body camera footage of the encounter. In that video, before making the statements that he found the bag and only suspected it contained

12

methamphetamine, Cole declared, "I've got some drugs on me," the drugs were "right there in [his] pocket," and the drugs were in a plastic bag. Additionally, Boettger testified Cole stated he had a rock and confirmed he was not referring to an actual rock. Taking all the evidence in the light most favorable to the State, there was sufficient evidence to support that Cole knew he possessed methamphetamine, and we affirm his conviction.

Affirmed.