NOT DESIGNATED FOR PUBLICATION

No. 124,369

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PAEDEN S. HARLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed May 13, 2022. Affirmed.

Submitted by the parties for summary disposition under K.S.A. 2020 Supp. 21-6820(g) and (h).

Before BRUNS, P.J., CLINE, J., and JAMES L. BURGESS, S.J.

PER CURIAM: Paeden S. Harley appeals the district court's revocation of his probation and imposition of his underlying prison sentence. We granted Harley's unopposed motion for summary disposition in lieu of briefing under Supreme Court Rule 7.041A (2022 Kan. S. Ct. R. at 48). After a review of the record, we find no error and affirm the district court's ruling.

Harley pled no contest to one count of criminal threat in violation of K.S.A. 2020 Supp. 21-5415(a)(1), a severity level 9 person felony, based on an incident that occurred on March 25, 2021. According to the State's factual basis for the charge at the plea hearing, Harley had been in a domestic violence incident with the victim, whom he later threatened to kill by slitting her throat. On May 27, 2021, the district court sentenced

1

Harley to 12 months' probation with an underlying 12-month prison sentence, along with 12 months' postrelease supervision. The court also ordered, as a condition of probation, that Harley could have no direct or indirect contact with the victim.

Two months later, in July 2021, the State moved to revoke Harley's probation. The motion relied on an affidavit from Jason Pike, an adult services officer, in support. In the affidavit, Pike said Harley violated three conditions of his probation: (1) Condition No. 1, since he was arrested and charged on July 17, 2021, for theft of property of services, interference with a law enforcement officer, assault on a law enforcement officer, and a probation violation; (2) Condition No. 2, since he failed to report as directed to the Douglas County Community Corrections Office immediately upon his release from the Franklin County, Kansas, Jail on July 12, 2021; and (3) Condition No. 12, since he contacted the victim. As to the violation of Condition No. 12, Pike noted:

> "That on July 13, 2021, the Affiant was contacted via telephone by . . . [the] Victim Witness Coordinator. [The Victim Witness Coordinator] reported to the Affiant that the Defendant had contacted the Victim . . . .
>
> "That on July 13, 2021, the Affiant received a telephone call from [the victim's roommate]. [The victim's roommate] informed the Affiant that she . . . wanted to report information that the Defendant was making contact with the Victim. [The victim's roommate] reported to the Affiant that the Defendant showed up at the Victim's residence . . . on July 13, 2021, at 09:00 AM and 11:00 A.M.
>
> "That on July 29, 2021, the Affiant met with the Defendant at the Douglas County Jail to sign the Order of Assignment to Community Corrections. When the Affiant read Condition No. 12, 'Have no direct or indirect contact with the Victim . . . except as allowed through divorce proceedings, child support proceedings or as otherwise directed by a jurisdictional court, in which documentation allowing contact will be provided to the Adult Services Officer,' the Defendant stated to the Affiant, 'Yea, I'm not agreeing to that.' The Defendant further reported to the Affiant that Judge Amy J. Hanley gave the Defendant permission to communicate with the Victim by telephone."

Harley stipulated to violating Condition No. 2 and Condition No. 12 as alleged in the affidavit. Based on these stipulations, the district court found Harley had violated his probation. The State recommended revoking Harley's probation out of safety concern for the victim, based mainly on Harley's statement to Pike that he had no intent to stay away from her. Pike testified on the State's behalf, explaining:

> "I met with Mr. Harley . . . to have the Order of Assignment signed. And during that jail visit Mr. Harley had reported to me that he would not be following through with the directive of not contacting the victim, and he was only initialing the condition, saying that basically I reviewed it with him. He also reported to me that Judge Hanley gave him permission to have contact with the victim."

Harley's attorney recommended a sanction rather than revoking probation, arguing Harley was confused about the court's no-contact order and that he had not injured the victim when he contacted her. Harley then addressed the court himself, explaining that he did not clearly understand that he could not contact the victim. He claimed the judge had given him permission to call the victim to contact his children at one point, and he believed that he could still do that. After considering the parties' arguments, the court revoked Harley's probation, relying on the public safety exception, K.S.A. 2020 Supp. 22-3716(c)(7), to bypass the intermediate sanctions.

On appeal, Harley argues the district court abused its discretion in revoking his probation and imposing his underlying prison sentence. We review a district court's revocation of an offender's probation for an abuse of discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). Judicial discretion is abused if the decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126-27, 431 P.3d 850 (2018). Unreasonable means that "no reasonable person would have taken the view adopted by the trial court." *State v. Jones*, 306 Kan. 948, Syl. ¶ 7, 398 P.3d 856 (2017). Harley, as the

party asserting the district court abused its discretion, bears the burden of showing an abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Under the probation revocation statute, a district court must first exhaust the required intermediate sanctions before revoking a defendant's probation, unless it finds that a statutory exception applies, allowing it to bypass the intermediate sanctions. K.S.A. 2020 Supp. 22-3716(c). One exception allows the district court to revoke probation without first imposing intermediate sanctions if "[t]he court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2020 Supp. 22-3716(c)(7)(A). Harley does not assert that the district court failed to make particularized findings. Instead, he argues the district court abused its discretion because "revocation was unreasonable given the circumstances surrounding the allegations—that he showed up at the victim's house out of concern for his children, and without understanding the district court's no contact order."

Contrary to Harley's argument, the district court's decision to revoke his probation was not unreasonable and the record does not support his argument. First, nothing in the record suggests that Harley went to the victim's residence out of concern for his children. The only facts in the record related to the July 13, 2021 incident are the allegations in the affidavit. Harley stipulated to these allegations at the probation violation hearing. And the affidavit does not explain why Harley went to the victim's residence that day.

Second, Harley's claim that he did not understand the district court's no-contact order is unreasonable, based on the record. For example, he signed a plea agreement that set forth, as a probation condition, "You are to have no contact, direct or indirect, with [the victim], except as allowed through the divorce case." And at the plea hearing the next day, he confirmed with the court that he understood everything in the plea agreement.

4

Harley sought to raise the same argument he is raising here—that he did not understand the no-contact order—at the probation violation hearing:

> "The State said that I had a clear understanding of not being able to contact the victim in this case. But I didn't, because if you guys go back into the court records you did give me permission to call [the victim's] phone number or [the victim's roommate's] number to make contact with my children at one point. . . .
>
> " . . . So, I was under the impression that that was still something I was allowed to do."

But at the plea hearing, the court prohibited Harley from contacting the victim after the State pointed out that Harley had been making phone calls from jail to the victim, threatening her. After the State's attorney made the judge aware of this, the judge was clear: "I'm going to reiterate one more time: No contact with [the victim]. If you want an update on the children, I know we specifically put a provision in place whereas a roommate could report on that." And at that point, the State's attorney informed the court that the victim's roommate said Harley could have her telephone number so he could call *her* for updates about the children, since she was also in the home with the children. This is what the court agreed to—allowing Harley to call *the roommate* to receive updates on the children.

The district court also reminded Harley of the no-contact order at the sentencing hearing. There, the judge took great care to ensure that Harley understood the probation condition prohibiting him from contacting the victim:

> "THE COURT: For your probation, I'm going to order the following conditions, Mr. Harley, and you need to listen closely. I order that you have no direct or indirect contact with [the victim]. The only contact that would be allowed is if there is anything allowed through divorce proceedings, child custody proceedings, or otherwise directed by a jurisdictional court in which documentation allowing that contact must be provided to your supervising officer.

5

"Do you understand that condition?

"THE DEFENDANT:  Yes, Your Honor.

"THE COURT:  I am extremely serious about it. You will have no contact with her unless there is a child custody court that lays out specifically how that will occur, and your supervising officer needs to know that before you have that contact, otherwise, they're going to view you not in compliance.

"Understood?

"THE DEFENDANT:  Yes, Your Honor."

And the judge even addressed the point one more time before concluding the sentencing hearing, telling Harley:

"I don't want you having contact with the victim. I have a specific recollection of some phone calls that went on with regard to while you've been in custody that lead me to believe that you just can't help yourself, but you better. You better keep yourself from having that contact with her because that is a Court order and I want to know if that is violated in any way, shape or form immediately."

Thus, before Harley went to the victim's residence, he had been clearly informed of the district court's no-contact order several times. And, even if Harley's statement were true—that the court gave him permission to *call* the victim—this still did not justify his actions because the allegations in the affidavit were that Harley *went to the victim's residence*. His claim that he did not understand the district court's order is not supported by the record.

The district court's decision to revoke probation was reasonable. It revoked probation based on the public safety exception and it properly set forth with particularity its reasons for doing so:

"Today the Court finds that the probation of Mr. Harley should be revoked based on the grave concern for public safety that I have in these circumstances. I believe public

6

safety would be jeopardized by continuing to have Mr. Harley on probation, and I will now set forth, with particularity, the reasons I have this belief and make this finding.

"I will start with the underlying facts of this case that are in the affidavit of prosecution, and would have been proffered. The defendant waived preliminary hearing, and they were proffered as part of the record for the plea. That is specifically that a physical altercation erupted between [the victim] and Mr. Harley. [The victim] indicated that Mr. Harley punched her while she was driving and later pulled her hair, pulling her head towards his lap and punched her head repeatedly. The officer observed an obvious laceration in the area of her left eyebrow.

"[The victim] and her roommate reported that Mr. Harley had threatened to kill [the victim] by slitting her throat. [The victim] was concerned enough for her safety that she called a friend to pick her up and stayed overnight with her friend. Mr. Harley arrived where she was staying and was told to leave.

"I would also note I heard from [the victim] in this case at sentencing, and perhaps on other occasions. This Court observed [the victim], observed her fear of the defendant, heard her statements with regard to her concern, and I have grave concern regarding those facts.

"The indication from defense counsel was that no one was hurt. I would clarify that by saying no one was hurt this time with regard to the allegations in the affidavit of probation. Someone was certainly hurt in the original allegations, and we could go well beyond that with regard to emotional abuse, but I will stop there. I also find a reason that I believe public safety would be jeopardized, is that Mr. Harley was a criminal history category C at the time of sentencing. He was presumptive probation, which is why the Court gave him probation, but he has 19 criminal history items, including the following: domestic battery, interference with a law enforcement officer, domestic battery again, burglary of a dwelling, battery, criminal use of a weapon, assault, [and] battery.

"I also note from the presentence investigation report that at the time that this crime was committed[,] Mr. Harley was on felony bond for Franklin County cases 20-CR-123 and 20-CR-205. That is a high criminal history category with several violent offenses in that record, to which Mr. Harley agreed was accurate as a reflection of his criminal history at the time of sentencing.

"Third, I find that public safety will be jeopardized because Mr. Harley—I do not find credible that he said—his statements that he did not understand my order at sentencing. There was no lack of clarity in my order at the time of sentencing. The phone

7

contact that was allowed, that was referenced earlier, was a part of an earlier hearing. We had a specific discussion about that, and then at sentencing I made it clear that no contact whatsoever would occur except as allowed through the divorce proceeding. I am fairly certain that I asked Mr. Harley point blank, after I announced that, if he understood my order, and he answered yes. Nevertheless, my order was not unclear, and for Mr. Harley to tell the probation officer that I gave him permission to have contact is not credible, that is not accurate.

"And also supporting that is the fact that he was released on July 12th as noted in the affidavit that he stipulated to here today from Franklin County, and a day later, the very next day, July 13th, he had contact with [the victim] as he stipulated to. That backs up my concern for public safety based on the fact that he has absolutely no intention of following my order or any order that I would make regarding his probation at any point of not having contact with [the victim]. He simply will not follow that order. I intend that it will be a condition of his probation, but he won't follow it. He has made that clear by immediately, upon release, violating it. But more importantly and specifically by telling Jason Pike with Community Corrections that he had no intention of following the orders. Specifically saying, I'm not agreeing to that, as if it were Mr. Harley's choice whether or not he agrees to it.

"Further, I find that I have concerns that public safety will be jeopardized based on all of the facts of Condition No. 12, that he violated his probation and stipulated to. Again, specifically that he showed up at the victim's residence the day after he was released, and he went right to her. For all of those reasons, this offender is a threat to public safety, specifically to [the victim], and this Court has a concern, and I am going to utilize the exception with regard to public safety and revoke his probation and order him to serve his original sentence . . . ."

We find the district court did not abuse its discretion in revoking Harley's probation and ordering him to serve his underlying prison sentence.

Affirmed.

8